Good morning, Your Honors. May it please the Court, I'm Claire Leary. I represent the Petitioner, Mr. Guzman. Counsel, is your client essentially in the same position as Alvarenga? Is there any meaningful distinction between this case and that one? Well, Your Honor, the distinction is that my client was not afforded a full and fair hearing the first time around and had no access to judicial review of that order. Because of the time at which the order applied, he could not have appealed, is my understanding. And so he fits within the class of petitioners that Alvarenga outlines as people who might have a claim still. He's someone who didn't get a full and a fair hearing. And I come here for that now, today. And why didn't he get a full and fair hearing? For the following reasons that he was not represented by counsel, he couldn't afford to hire a lawyer and he didn't have one. The immigration judge was wrong about the state of the law at that time. I think he wasn't — he was not just mistaken about the law, but there had been no pronouncement on whether a felony noninjury DUI made for a deportable or removable offense at that time. So his position simply could not have constructed an argument against that and asserted his rights. But wasn't that sort of true in Alvarenga as well? There was a claim that he was precluded because of law that turned out to be incorrect. There was, Your Honor. But I think that in — Alvarenga was established that there was a right to judicial review to correct what had gone wrong in front of the immigration judge. And that wouldn't have happened for Mr. Guzman. He wasn't at that — he wouldn't have been afforded judicial review. Why not? For this service. Why not? If he petitioned? I'm sorry, Your Honor? Why not? My understanding is that under 1258 U.S.C. 1252a to c, he couldn't have appealed and he would not have come before this Court. He couldn't have gone to the BIA? Pardon me? He couldn't have gone to the BIA? I imagine, Your Honor, he could have gone to the BIA. And he didn't. And he didn't. Once he goes to the BIA, there's a review in this Court of all final BIA orders. This is not like one of those cases we had before where there's no judicial review of the initial order. He could have gotten review. He could have gotten as far — So how is that any different from Alvarenga? I — you know, he could have argued. Maybe the law was against him at the time. Maybe his would have been the case where the argument succeeded if he had made it. But he didn't. He could have gone to the BIA, Your Honor. I agree with Your Honor. He could have done that. Again, though, having no lawyer, sitting in jail with a high bail that he couldn't have met. He didn't — I mean, sure, the guy who doesn't get a lawyer shouldn't be better off than the guy who does get a lawyer and gets a review and fails. I mean, that doesn't work, does it? It wouldn't be fair. It wouldn't be fair. But for Mr. Guzman, he all along has had no opportunity for review. He could have gone to the BIA, and at the time, he would have — they would have held that the felony — it's my understanding from the review, the history of the law, they would have held that the felony — And then he could have come here, and maybe it would have gone the other way. I mean, that's just the process. You make your arguments and appeal, and — but if you don't, it seems to me you're bound. But he was — I see the point, but he was precluded at that time, the time at which he would have wound up in front of this court or attempted to come before this court. He was precluded from judicial review, is my understanding. And there would have been no review of the BIA's decision. The BIA's decision at the time would have been that the felony DUI did count. Tell me again why he was precluded from judicial review. I'm sorry? I'm missing why he was precluded from judicial review. Because he would have lost, or because he couldn't file the petition at all? Because under 8 U.S.C. 1252a2c, there was no judicial review at the time for an aggravated felony removal. What you're saying is because we later decided that we at least have a review to decide whether it's an aggravated felony, is that what you're saying? Because we hadn't yet decided that we had jurisdiction to decide our own jurisdiction. That's right, Your Honor. I don't have that. Was there any case saying we didn't? I'm saying that the way I understand the history of the law, had he applied at that time, he would not have been afforded review by this court. I understand that since that time, this Court has said at least that there is jurisdiction to determine whether or not there's jurisdiction and jurisdiction. That's nothing novel. That's about 200 years old. The Court always has jurisdiction to determine its jurisdiction. It is what, Your Honor, I'm saying? That's not a novel proposition, that the Court has jurisdiction to determine its own jurisdiction. That goes back about 200 years. That's hardly novel. And in fact, the very case where we said this would have been a case, would have been exactly in your client's position, it was most law-specifically on point. Nevertheless, I tried, and they got this Court to rule. So I am not sure that arguing, gee, the law was against me, and therefore I need not even have tried, is a very persuasive argument. If everybody takes that view, the law would never change. Your Honor, he should have gone farther. And he should have gone to the BIA, and he should have tried. He should have. And I think he stuck with the failure he didn't. That's the consequence. And we get back to Judge Graham's question. How is this case different from Alderanga? Because he had no hearing and no right to judicial review. I believe that at the time, and I can more fully brief it for the Court, he couldn't have gotten review because he faced — because he had been deported or because he was facing removal for an aggravated felony. And that's the difference. I think I understand your position. Why don't we hear from the government? Why don't you save the rest of your time for rebuttal? Maybe you have something in response to the government's argument. I'm sorry? I said why don't you save the rest of your time for rebuttal, and we hear from the government. Okay. Maybe you have something in response to the government's position. Your Honor, we would take the position that this case is precisely an old force with Alderanga. Mr. Alderanga actually was also an alien who was convicted of crimes as well. And the Court did find that in that case that he had not shown that he had been deprived of judicial review. We think that the issue here, the issues that are raised, again, go to the issue of whether you apply new precedent, quote, retroactively, to a case that's already been closed, someone who's been deported, and someone whose immigration case has been finished. And in Alderanga, first of all, the Court applied the judicial review bar and said we can't look at the old order. But then it went on to say, well, even if we could, the petitioner there, Mr. Alderanga, has not shown that he was deprived of judicial review, something that even in criminal proceedings is... Alderanga itself is a little odd, don't you agree? What's that? I'm sorry? Alderanga itself is a little odd. I mean, it's all the circuit and all that, but it's a little odd as a case, isn't it? Relying on Teague and all that. Well, I think... Taking Teague wholly out of its context? But I think it's correct in the sense, Your Honor, that it determined, as the Fifth Circuit just recently did as well in the letter that we sent to the Court, that once a... Immigration case where someone's deported is the quintessential case that is closed. And there's plenty of Supreme Court decisions in the civil context that do say that once a case is closed, that on direct review, there is no... It doesn't apply sort of retroactively. I think, however, the way that this Court analyzed the Supreme Court case... It's just res judicata. Why did they go wandering into Teague? Well, Your Honor raises a good point. I mean, we do cite a case that does sort of make this point in terms of res judicata. It's in a footnote, and it's, I believe, DeGrado is the case that sort of relies on res judicata. But I think, Your Honor, that it's clear as well, just under the Supreme Court case law, that there's no collateral tax after someone has been already removed. And in this case, the facts are especially compelling for the government here, because as Judge Kaczynski was asking it, this case, it's no similar as if someone who had never been deported, they just didn't exhaust their administrative remedies. I mean, this Court holds all the time under the statutory exhaustion provision that if you don't go to the Board of Immigration Appeals, you can't come see judicial review. This is no different, except here, he's been deported, comes back, and now attacks the order. Circumstances which we would say there should be even more stringent requirements. As we know in the criminal context, you're required to establish all various types of requirements before you can even attack an order in a criminal proceeding, immigration order. So here, there's nothing new that's being done. I think the easiest way for the Court to dispose of this case is just to say that there's no exhaustion here. And whichever way the Alvarenga Court sort of styled its analysis, I think it's correct in the sense that what it's saying is that, you know, after a case is closed, there's just no more review of that. Otherwise, you would have a situation where there, with each shift of the immigration law, you would have opportunities for aliens to, or incentives for aliens to come back across the border legally, and then collaterally attack the order. I mean, that just can't be the case. I don't think that that can be the case. Okay, thank you. You have about three minutes for rebuttal. Your Honors, I wanted to briefly address St. Cyr and the effect that that case has on Mr. Guzman's petition. There's no mention in St. Cyr of exhaustion. It's not within the opinion. And I understand that the INS is arguing that it would be inherent, but it's not there. And I ask the Court to … St. Cyr proceeded Alvarenga de Lobos. St. Cyr, Your Honor … I'm pretty sure. He filed a habeas corpus petition, and I believe that the Supreme Court opinion doesn't state what happened. What I'm saying is St. Cyr was on the books by the time we decided Alvarenga de Lobos. It was, Your Honor. So, to the extent there's any tension between the two, we have to presume that Alvarenga de Lobos took St. Cyr into account. Alvarenga de Lobos makes no mention whatsoever of St. Cyr, although St. Cyr was decided prior to it. Right. St. Cyr was in June, and Alvarenga was in November of 2001. Yes, Your Honor. And I think that that's because of the unique situation that St. Cyr presents, and Mr. Guzman is in that same situation. And that's that there is a detrimental reliance argument, and I think a specific performance argument that arises, because Mr. Guzman, like Mr. St. Cyr, pleaded guilty and had … should have been able to rely upon the availability of 212C relief as part of the quid pro quo for the entry of his plea. Alvarenga de Lobos doesn't address that, and I think that it should have addressed that, and I ask this Court to consider the problem there, that where someone pleads guilty and can think that he's going to be able to ask INS for some relief from the conviction, and that never comes … it does not come to pass. And in part, it doesn't come to pass, or it does not come to pass because there is no judicial review that's available to him. And I think it's important to consider, as we went through in the first part of the argument, he wouldn't have gotten beyond the BIA, and he wouldn't have gotten in front of this Court to argue that. Do you know that anybody actually … the cases in this Court, I guess it was Flores-Montez or whatever, the cases in this Court that held that we have jurisdiction to review our own jurisdiction weren't overruled in other cases of this Court. We had never held otherwise. So when you say he wouldn't have been able to appeal it, it's hard to know what you're saying. As far as I know, the law in this Circuit from the first day it was decided was that he did have the jurisdiction. We do have the jurisdiction to decide it. The INS concedes in its brief, Your Honor, that there was a period of time where it was unclear whether this Court … It had been unclear, but it wasn't true that there was a rule against it. There are situations in which we have an opinion that says you can't do it, and then later change your mind and say you can. That wasn't what happened here. I appreciate that. I understand what Your Honor is saying, although there was a statute that precluded review by this Court. Well, it didn't preclude review because we construed it as not precluding review. Very well, Your Honor. I was relying in part on the INS's statement that it was unclear whether somebody could get judicial review, and it seems to me that somebody in Mr. Guzman's position would not have gotten judicial review. And he was deported for an offense that is not deemed to be an aggravated felony and was never deemed to be an aggravated felony except by the immigration judge who initially issued the removal order. Thank you very much. Case decided. You will stand submitted. We'll take your recess.
judges: Kozinski, Graber, Berzon